UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

ROADWAY MOVING AND STORAGE, INC. D/B/A
ROADWAY MOVING, AND ROADWAY MOVERS INC.
D/B/A ROADWAY MOVING,

                 *Plaintiffs*,

   -against-

ROADWAY MOVERS LLC AND VIKAS SHARMA,

                 *Defendants*.

-------------------------------------------------------------------------X

Case No. 1:26-cv-06365

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' ORDER TO SHOW CAUSE
<u>FOR A PRELIMINARY INJUNCTION</u>**

OVED & OVED LLP
*Attorneys for Plaintiffs*
401 Greenwich Street
New York, NY 10013
Tel: 212.226.2376

Plaintiffs Roadway Moving and Storage, Inc. and Roadway Movers Inc., each doing business as Roadway Moving (together, "Plaintiffs" or "Roadway Moving"), respectfully submit this memorandum of law in support of their order to show cause (the "Application") for a preliminary injunction restraining Defendants Roadway Movers LLC ("RM LLC") and Vikas Sharma (together, "Defendants"), and their officers, agents, employees, and all those acting in concert or participation with them, from using, advertising, or selling moving or transportation services in connection with (a) the name "Roadway Movers," (b) the word "Roadway," or (c) any name or word confusingly similar to "Roadway" (the "Injunction").

## PRELIMINARY STATEMENT

Since 2008, Plaintiffs have built a national moving, storage, and relocation business under the trademark "Roadway Moving" (the "Mark").  Declaration of Ross Sapir ("Sapir Decl.") ¶ 2.  Plaintiffs today complete more than 30,000 moves annually, operate more than 292 trucks and tractors, employ more than 700 people, and maintain more than 400,000 square feet of warehouse space.  *Id.* ¶ 4. Plaintiffs hold A+ accreditation from the Better Business Bureau ("BBB"), a 4.9 rating on Trustpilot across more than 1,000 reviews, and more than 10,000 overwhelmingly positive customer reviews across platforms.  *Id.* & **Exs. 2-5**.  That reputation is difficult to build and easy to lose in the moving industry, where consumers select companies largely based on reviews and word of mouth.

In August 2024, Defendant Sharma formed Defendant RM LLC, a Virginia limited liability company that markets nationwide auto-transport and vehicle-shipping services under the name "Roadway Movers" (the "Infringing Mark").  Sapir Decl. ¶ 13 & **Ex. 8**.[1]  RM LLC does not provide physical moving services and owns no moving trucks; it is an auto-transport broker that collects fees and assigns vehicle-transport jobs to third-party carriers.  Sapir Decl. ¶¶ 14, 18 & **Exs. 9, 11**.  Its

---

[1] As used herein, "Ex." refers to the exhibits annexed to the accompanying Declaration of Aaron J. Solomon.

website touts "3+ Years of Experience" and "4000+ Customers Satisfied," representations irreconcilable with an entity formed in August 2024. Sapir Decl. ¶ 17 & **Ex. 10**. In under two years, RM LLC has accumulated an F rating from the BBB, twelve complaints (seven unanswered), and an average customer-review score of 2.88 out of 5. Sapir Decl. ¶ 19 & **Exs. 12-14**.

Plaintiffs did not know of RM LLC when it was formed. They learned of Defendants' use on or around February 2026, after receiving customer complaints, and subsequently received communications from aggrieved consumers who had entered into transactions with Defendants while believing they had dealt with Roadway Moving. Sapir Decl.¶¶ 21-23. Plaintiffs promptly investigated and, on February 16, 2026, sent Defendants a cease-and-desist letter. Solomon Decl. ¶ 3 & **Ex. 15**. On March 16, 2026, Sharma acknowledged receipt and stated that he was "evaluating a rebranding." Solomon Decl. ¶ 5 & **Ex. 16**. Plaintiffs set an April 3, 2026, compliance deadline, but Defendants' website and public listings remain live under the Infringing Mark. Solomon Decl. ¶¶ 6-7 & **Exs. 9, 16**; Sapir Decl. ¶ 14 & **Ex. 9**.

The Injunction should issue. Plaintiffs are likely to succeed on the merits because they own a protectable mark with nearly two decades of accumulated goodwill, and Defendants' use of a nearly identical name for related transportation services, through the same online channels, after written notice, has already created actual consumer confusion that will likely worsen. That showing entitles Plaintiffs to a statutory rebuttable presumption of irreparable harm, 15 U.S.C. § 1116(a), and the record independently establishes such harm: every consumer who deals with an F-rated broker while believing it to be Roadway Moving places Plaintiffs' reputation in Defendants' hands. Each day that Defendants use the name Roadway to provide inferior services or deceive consumers, they tarnish the Roadway name and damage the goodwill Plaintiffs spent nearly two decades developing.

The balance of equities and the public interest likewise favor relief, because Defendants have no legitimate interest in adopting a nearly identical name, and consumers have an interest in not being

2

deceived.

## FACTUAL BACKGROUND

**A.      Plaintiffs and the Roadway Moving Mark**

Founded in 2008 as a small moving company under the leadership of CEO Ross Sapir, Plaintiffs have operated continuously under the Mark for approximately eighteen years and have grown into a national moving, storage, and relocation company.[2]  Sapir Decl. ¶¶ 2-4.  Plaintiffs complete more than 30,000 moves annually, operate a fleet of more than 292 trucks and tractors, employ more than 700 people, maintain more than 400,000 square feet of warehouse space, and perform coast-to-coast and international moves.  *Id.* ¶ 4.  Plaintiffs are headquartered at 845 Third Avenue, New York, New York, with additional New York operations and a California facility in Northridge, and serve customers in major markets across the United States.  *Id.*

Plaintiffs hold A+ accreditation from the BBB and a 4.9 rating on Trustpilot across more than 1,000 reviews, and Plaintiffs have received more than 10,000 overwhelmingly positive customer reviews across platforms.  *Id.* ¶ 5 & **Exs. 2-5**.  Recent Trustpilot reviews are representative:

> "The BEST moving company I've ever used (and I've moved a lot!).  They were so efficient and moved quickly (but gently) to ensure we met our deadlines[.]" (May 26, 2026)

> "This is actually my second time using Roadway, and once again they exceeded my expectations. …  They were professional, efficient, kind, and had such positive attitudes throughout the day."  (June 18, 2026)

Sapir Decl. ¶ 5 & **Exs. 3-5**.  Plaintiffs generate business through these reviews and through substantial advertising across digital and traditional channels, including Google, Meta (Facebook and Instagram), Yelp, Angi, and Trustpilot.  Sapir Decl. ¶ 7.  In 2023, Roadway Moving became the Official Moving & Storage Partner of the New York Yankees.  *Id.* ¶ 8.  Plaintiffs have also received media coverage

---

[2]  While at all relevant times doing business as "Roadway Moving," in or around October 2016 Plaintiff Roadway Moving and Storage, Inc. transferred its licenses to a newly formed New York corporation, Plaintiff Roadway Movers Inc., which has continued doing business as Roadway Moving.  Sapir Decl. ¶ 3.

and industry recognition, including sponsored Brand Studio coverage in The Real Deal in 2024 and recognition of Sapir as an EY Entrepreneur of the Year honoree in 2025. *Id.* ¶ 8 & **Ex. 6**. In 2026, Roadway Moving announced a major fleet expansion. *Id.* ¶ 8 & **Ex. 17**. Plaintiffs also support community programs through their Roadway Cares initiative, including Feeding NYC, Children's Village, and logistics support for the AIDS Walk and American Cancer Society events in Central Park. *Id.* ¶ 8.

Through this long, continuous, and successful use, the Mark has come to identify Plaintiffs as the source of high-quality moving, storage, and relocation services.[3] *Id.* ¶ 9.

### B. Defendants and the Infringing Mark

On or about August 9, 2024, Defendant Sharma formed Defendant RM LLC, a Virginia limited liability company (Entity ID 11731842) with a registered and principal office at 13066 Thrift Lane, Woodbridge, Virginia 22193. Sapir Decl. ¶ 13. Virginia corporate records list the entity as active, and Virginia, BBB, and FMCSA records identify Sharma as its owner, manager, and contact. *Id.*

RM LLC operates a website at roadwaymovers.us that uses the name "Roadway Movers" and holds the business out as a nationwide auto-transport and vehicle-shipping operation. *Id.* ¶ 14. The site displays the contact address support@roadwaymovers.info, a Woodbridge, Virginia address, and the telephone number +1 (571) 547-2845, and it advertises open-trailer, enclosed-trailer, flatbed, powersport, heavy-vehicle, and boat shipping. *Id.* The site solicits quotes nationwide by pickup and delivery ZIP code. *Id.* ¶ 14. The site also discloses that "Roadway Movers LLC operates as a

---

[3]   Plaintiffs have enforced the Mark before. In or around 2015, a third party formed a Florida corporation named "Roadway Moving and Storage Inc.," the same name as Plaintiffs' New York corporate entity. After Plaintiffs notified the registrant of its potential liability, the registrant voluntarily transferred the entity to Plaintiffs' principal. Sapir Decl. ¶ 12. In 2018, Plaintiffs sued a different, unrelated infringer that had adopted the name "Roadway Movers LLC." Plaintiffs obtained a default judgment in this District permanently enjoining that infringer from using the name "Roadway Movers," the word "Roadway," or any confusingly similar name. *Roadway Moving & Storage, Inc. v. Roadway Movers LLC*, No. 1:18-cv-04169 (KPF) (S.D.N.Y. Apr. 1, 2019), ECF No. 44; **Ex. 7**.

brokerage, collaborating with a carefully selected group of contracted drivers." *Id.* ¶ 14. Defendants thus offer transportation and relocation-related services, under a name nearly identical to the Mark, through the same online channels in which Plaintiffs advertise and are found by consumers. *Id.* ¶ 15.

The difference between the Infringing Mark and the Mark is a single inflection: "Movers" for "Moving." *Id.* ¶ 15. Consumers hire movers infrequently, and a consumer who remembers a well-reviewed company called "Roadway" cannot be expected to recall which form of the word follows it. *Id.* ¶ 16. Likewise, when referring friends and family to the moving company they used in the past, they likely only say "Roadway."

**C.     The Public Record Contradicts Defendants' Claimed Credentials**

Defendants' captured website materials tout "3+ Years of Experience" and "4000+ Customers Satisfied." Sapir Decl. ¶ 17 & **Ex. 10**. RM LLC was formed in August 2024. *Id.* ¶ 13 & **Ex. 8**. The two facts cannot be reconciled: at the time of the captures, the entity had existed for well under two years.

The regulatory record is likewise at odds with Defendants' self-presentation. Although Defendants hold themselves out as a nationwide transporter, FMCSA records list RM LLC as a broker, USDOT No. 4286210, MC-1666999, with operating authority designated "NOT AUTHORIZED" and zero power units.[4] *Id.* ¶ 18 & **Ex. 11**. Whatever the precise regulatory consequences of that status, the public federal record contradicts any impression that RM LLC is a carrier operating its own fleet. It is a broker: it takes a fee and assigns the work to third-party carriers unknown to the consumer. Sapir Decl. ¶ 18.

Defendants' BBB record reflects the results. RM LLC holds an F rating, with twelve complaints filed against it, seven of which it has not answered, and an average customer-review score

---

[4]As a broker, RM LLC is subject to far less extensive federal regulation than motor carriers such as Plaintiffs. Brokers are regulated principally as to advertising disclosures, dealings with shippers, and recordkeeping, *see* 49 C.F.R. pt. 371, and are not subject to the safety, driver, and operational requirements that govern carriers.

of 2.88 out of 5 across 17 reviews.  *Id.* ¶ 19 & **Exs. 12-14**.  Consumers describe the experience in their own words: one wrote that Defendants "ask[ed] me for [a] deposit of $200 via Zelle" and "never pick[ed] my car"; another reported "Fraud Fraud through bait and switch.  They could not provide the service in the contract and kept my deposit"; a September 26, 2025, complaint alleged that, after Defendants failed to arrange pickup and stopped responding, they retained a $150 deposit and made two additional charges of $150 and $200 despite providing no service.  *Id.* ¶ 19 & **Exs. 12-14**.  By contrast, Plaintiffs have maintained a strong service record over eighteen years.  *Id.* ¶¶ 4-8.

Defendants' inferior service record presents a direct risk to Plaintiffs' reputation.  Consumers who see or experience deposits taken, service failures, bait-and-switch pricing, or other inferior service under the name "Roadway Movers" are likely to attribute that conduct to Roadway Moving, undermining the Mark's association with reliable and high-quality service.  Sapir Decl. ¶¶ 19, 24-25.

### D.     Consumer Contacts Reflecting Confusion

Plaintiffs learned of Defendants on or around February 2026.   Sapir Decl. ¶ 20.  Plaintiffs subsequently received several communications from consumers concerning transactions those consumers had entered into with Defendants while believing they had dealt with Roadway Moving.  Sapir Decl. ¶¶ 21-22.  Those misdirected communications show that consumers confused Defendants' business with Plaintiffs' business and looked to Plaintiffs to address issues arising from Defendants' services.  Sapir Decl. ¶¶ 20-23.

### E.     Notice, Defendants' Response, and Continued Use

On February 16, 2026, Plaintiffs, through their general counsel, sent Defendants a cease-and-desist letter demanding that Defendants stop using the "Roadway Movers" name and remove all infringing listings, websites, and advertising within fourteen days.  Solomon Decl. ¶ 3 & **Ex. 15**.  On March 16, 2026, Sharma acknowledged receipt, stated that he was "evaluating a rebranding" of the company, and represented that he would discontinue any potentially confusing use of the name.  *Id.*

¶ 5 & **Ex. 16**. On March 18, 2026, Plaintiffs set April 3, 2026, as the deadline for full compliance, and on March 31, 2026, Plaintiffs advised Defendants that no corrective action had been confirmed. *Id.* ¶¶ 6-7 & **Ex. 16**. The deadline passed without compliance.

As of the date of this memorandum, Defendants' website and public listings remain live under the Infringing Mark. *Id.* ¶ 7 & **Ex. 9**.

## ARGUMENT

## I.

## THE COURT SHOULD ENJOIN DEFENDANTS' USE OF THE INFRINGING MARK

A party seeking a preliminary injunction must establish (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of relief, (3) that the balance of equities tips in its favor, and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 667 (2d Cir. 2023).

The requested Injunction is prohibitory, not mandatory: it would stop Defendants' recent infringing conduct, mitigate the ongoing damage to the Roadway brand, and restore the status quo that existed before Defendants adopted the Infringing Mark in August 2024. *See N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 36-37 (2d Cir. 2018) (status quo is "the last actual, peaceable uncontested status which preceded the pending controversy"); *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 114 (2d Cir. 2006) ("A prohibitory injunction is one that forbids or restrains an act. For example, in the typical trademark case a prohibitory injunction seeks to stop alleged infringement.").

### A. Plaintiffs Are Likely to Succeed on the Merits of Their Trademark Claim

To prevail on a claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), a plaintiff must show (1) that it owns a mark entitled to protection and (2) that the defendant's use of a similar

mark is likely to cause confusion as to the source, sponsorship, or affiliation of the parties' services.[5]

*Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003) ("[W]here a mark merits protection, a showing that a significant number of consumers are likely to be confused about the source of the goods identified by the allegedly infringing mark is generally sufficient to demonstrate both irreparable harm and a likelihood of success on the merits."); *Vans, Inc. v. MSCHF Prod. Studio, Inc.*, 88 F.4th 125, 135-36 (2d Cir. 2023) (similar).  Plaintiffs satisfy both elements.

### 1.    Plaintiffs Own a Protectable Mark

Section 43(a) protects qualifying unregistered marks, and the principles governing registrability under Section 2 of the Lanham Act generally determine whether an unregistered mark is protectable.[6] *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).  Marks are classified along a spectrum of increasing distinctiveness as generic, descriptive, suggestive, arbitrary, or fanciful.  *Id.* (citing *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976)).  Suggestive, arbitrary, and fanciful marks are inherently distinctive and protectable, while descriptive marks are protectable upon a showing of secondary meaning.  *Id.* at 768-69.

"Roadway Moving" is suggestive.  The word "roadway" does not describe the service of packing, storing, and relocating household goods.  Rather, it evokes the roads over which the goods travel, and it takes a step of imagination to connect the two.  *Cross Commerce Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 163-64 (2d Cir. 2016) (after surveying authority for the proposition

---

[5]  The Complaint pleads additional claims, but this Application seeks preliminary relief solely on Plaintiffs' infringement claim, which independently supports the requested injunction.

[6]  Plaintiffs' rights in ROADWAY MOVING arise from continuous common-law use since 2008.  Plaintiff Roadway Movers Inc. has a pending use-based application on the Principal Register for ROADWAY MOVING in standard characters, Serial No. 99892503, filed June 18, 2026, for "Moving company services; Furniture moving; Moving and storage of goods" in International Class 39.  The application is live and awaiting examination.  Plaintiff Roadway Moving and Storage, Inc. owns U.S. Registration No. 5,154,488 for a design-only mark consisting of a truck with two human figures carrying a heart up the truck's back ramp, registered for "moving and storage of goods."  Sapir Dec. ¶ 11 & **Ex. 1**.  Because ROADWAY MOVING itself is not federally registered, Plaintiffs proceed under Section 43(a), which protects qualifying unregistered marks.

that suggestive marks convey an impression of the product but require imagination to grasp its nature, explaining that "the critical inquiry[] … is how easily consumers would deduce the nature of [the mark-holder's services] from [the mark] alone."). The Mark is therefore inherently distinctive and protectable.

Although suggestive rather than arbitrary, the Mark is strong because eighteen years of continuous, exclusive, and commercially successful use have given it substantial acquired distinctiveness in the marketplace. A mark's strength turns on both its inherent distinctiveness and the recognition it has achieved in the marketplace, and courts assess acquired distinctiveness by reference to, among other things, advertising expenditures, media coverage, sales success, attempts to plagiarize the mark, and length and exclusivity of use. *Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc.*, 830 F.2d 1217, 1222 (2d Cir. 1987). Thus, in *Playtex Products, Inc. v. Georgia-Pacific Corp.*, 390 F.3d 158, 164 (2d Cir. 2004), the court held that "Wet Ones," though suggestive of moist towelettes, was a strong mark because sustained sales success and market presence had made it distinctive in the marketplace.

So too here. Plaintiffs have had continuous and exclusive use since 2008 (Sapir Decl. ¶ 2); substantial advertising across major digital platforms and traditional channels, together with the Yankees partnership (*id.* ¶¶ 7-8); continuing press coverage through 2026 (*id.* ¶ 8 & **Exs. 6, 17**); sustained growth to more than 30,000 moves per year and more than 700 employees (Sapir Decl. ¶ 4); and repeated attempts by others to appropriate the Mark, which Plaintiffs have policed (*id.* ¶ 12). The Mark is strong both inherently and in the marketplace, and it is protectable. *Playtex*, 390 F.3d at 164.

### 2. Defendants' Use of the Infringing Mark Is Likely to Cause Confusion

Likelihood of confusion is assessed under the eight factors of *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961): (i) the strength of the plaintiff's mark, (ii) the

similarity of the marks, (iii) the proximity of the products or services, (iv) the likelihood that the senior user will bridge the gap, (v) actual confusion, (vi) the defendant's good faith, (vii) the quality of the defendant's product, and (viii) the sophistication of the purchasers. No single factor is dispositive, and the inquiry focuses on whether consumers are likely to be confused. *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 84-85 (2d Cir. 2020). The factors here point in one direction.

1.    *Strength of the Mark.*  As shown above, the Mark is suggestive and has acquired substantial secondary meaning through eighteen years of exclusive use, extensive advertising, press, and commercial success.

2.    *Similarity of the Marks.*  "Roadway Movers" and "Roadway Moving" share their dominant term and differ only in the inflection of the second word.  In the contexts in which consumers encounter the marks, principally online search results, listings, and advertisements, the marks look alike, sound alike, and convey the same commercial impression. *See Car-Freshner Corp. v. Am. Covers, LLC*, 980 F.3d 314, 330-31 (2d Cir. 2020) (similarity weighs heavily where the junior user adopts the senior user's dominant term).  This factor strongly favors Plaintiffs.

3.    *Proximity of the Services.*  The parties' services are related and overlapping. Defendants broker moving services, including auto transport, while Plaintiffs provide those same services directly to customers. Sapir Decl. ¶ 16.  Both offerings serve consumers planning relocations, and both are marketed nationwide through the same online channels. Services need not be identical for this factor to favor the senior user. *See Virgin Enters.*, 335 F.3d at 150.  A consumer arranging a long-distance move would readily assume that "Roadway Movers," offering to ship the family car, is the same company as, or an affiliate of, "Roadway Moving."  This factor favors Plaintiffs.

4.    *Bridging the Gap.*  To the extent any gap separates household-goods moving from auto transport, Plaintiffs already coordinate auto-transport services for long-distance moves.  Sapir Decl. ¶ 16.  This factor favors Plaintiffs or is neutral.

5. *Actual Confusion*. Plaintiffs received communications from consumers about transactions those consumers had entered into with Defendants while believing they had dealt with Roadway Moving. Sapir Decl. ¶¶ 20-23. Misdirected communications of this kind are probative evidence of actual confusion. *E.g.*, *Morningside Grp. Ltd. v. Morningside Capital Grp., L.L.C.*, 182 F.3d 133, 141 (2d Cir. 1999) ("Evidence that confusion has actually occurred is of course convincing evidence that confusion is likely to occur"). Actual confusion need not be shown to establish a likelihood of confusion, but its presence here, so early in Defendants' operation, is telling. This factor favors Plaintiffs.

6. *Defendants' Good Faith*. The bad-faith inquiry asks whether the defendant adopted its mark with the intention of capitalizing on the plaintiff's reputation and goodwill. *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 388 (2d Cir. 2005). Defendants adopted a name one inflection removed from an eighteen-year-old, heavily reviewed mark in a related industry, paired it with experience claims that predate their own existence, and continued using it after a cease-and-desist letter, after Sharma's written acknowledgment that he was "evaluating a rebranding," and after an April 3, 2026, compliance deadline that came and went. Solomon Decl. ¶¶ 3-7 & **Exs. 15-16**; Sapir Decl. ¶¶ 13, 17-19 & **Exs. 8, 10-14**. Continued use after notice, coupled with false credentials, supports an inference of bad faith. This factor favors Plaintiffs.

7. *Quality of Defendants' Services*. Defendants hold an F rating from the BBB, with twelve complaints (seven unanswered) and a 2.88/5 review average. Sapir Decl. ¶ 19 & **Exs. 12-14**. Where the junior user's services are markedly inferior, the senior user's reputation is at risk from any association between them. This factor favors Plaintiffs.

8. *Sophistication of Purchasers*. The relevant purchasers are ordinary consumers who hire movers or vehicle shippers infrequently, often under time pressure, and who locate providers

through online search.  Sapir Decl. ¶¶ 6, 16.  Such consumers are unlikely to parse the difference between "Movers" and "Moving" appended to the same distinctive term.  This factor favors Plaintiffs.

Because each factor favors Plaintiffs, Plaintiffs are likely to succeed on the merits of their trademark claim.

### B.    Plaintiffs Face Irreparable Harm

Because Plaintiffs are likely to succeed on the merits, they are entitled to a rebuttable presumption of irreparable harm.  15 U.S.C. § 1116(a) (a plaintiff seeking a preliminary injunction "shall be entitled to a rebuttable presumption of irreparable harm" upon a finding of likelihood of success on the merits); *see Colony Grill Dev., LLC v. Colony Grill, Inc.*, No. 21-2136, 2022 U.S. App. LEXIS 8376, at *8 (2d Cir. Mar. 30, 2022) ("likelihood of success[] [] gives rise to a presumption that [the plaintiff] would suffer irreparable harm in the absence of an injunction[] [under] 15 U.S.C. § 1116(a)"); *Sport Dimension, Inc. v. Individuals, Corps., Ltd. Liab. Cos. P'ship & Unincorporated Ass'ns Identified on Schedule "A"*, 2026 U.S. Dist. LEXIS 140561, at *11 (S.D.N.Y. June 24, 2026) (recognizing that the likelihood-of-success and irreparable-harm analyses merge because of the presumption under 15 U.S.C. § 1116(a)).

While the section 1116(a) presumption suffices to grant relief (*id.*), the record independently establishes irreparable harm that is actual and imminent, not remote or speculative.  When consumers deal with Defendants while believing they are dealing with Plaintiffs, Plaintiffs lose control over their reputation: the quality of "Roadway" service, in those consumers' eyes, becomes whatever Defendants and their unknown subcontracted carriers deliver.  "[L]oss of reputation, good will, and business opportunities" is precisely the kind of injury that cannot be compensated by money damages. *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004) (affirming finding of irreparable harm).

The harm here is not hypothetical.  Defendants hold an F rating and a record of consumer

complaints describing deposits taken, services not performed, and bait-and-switch pricing. Sapir Decl. ¶ 19 & **Exs. 12-14**. Consumers who believed they had hired Roadway Moving have already contacted Plaintiffs after dealing with Defendants. Sapir Decl. ¶¶ 20-23. In an industry in which customers choose providers on the strength of reviews and ratings, those misattributed failures erode the value of the Mark and Plaintiffs' control over their reputation in ways that cannot be measured or restored after the fact. Plaintiffs also acted promptly after discovering Defendants' use on or around February 2026. Sapir Decl. ¶ 20; Solomon Decl. ¶ 3.

### C. The Balance of Equities and the Public Interest Favor the Injunction

The balance of equities tips decidedly in Plaintiffs' favor. On Plaintiffs' side lies eighteen years of goodwill placed at risk by conduct that Defendants were asked to stop and that Sharma stated he would address. On Defendants' side, only the loss of a name adopted in 2024 that they have no right to use. An injunction would not prevent Defendants from brokering auto transport; it would require them to do so under a name that does not trade on Plaintiffs' Mark. When a defendant has little legitimate goodwill in the challenged name and other names remain available, any rebranding hardship does not outweigh the senior user's harm from continued confusing use. *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010).

The public interest also favors relief. "[T]he public has an interest in not being deceived," and trademark injunctions serve that interest. *Id.* Here the interest is concrete: consumers selecting a mover or vehicle shipper are entitled to know whether they are dealing with an established moving company or a recently formed broker that operates no vehicles of its own, and the Infringing Mark obscures exactly that distinction.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the Application and enter the requested preliminary injunction.

Dated: New York, New York
July 27, 2026

/s/ *Aaron J. Solomon*
**OVED & OVED LLP**
Aaron J. Solomon, Esq.
*Attorneys for Plaintiffs*
401 Greenwich Street
New York, NY 10013
Tel: 212.226.2376
Email: aaron@ovedlaw.com

## <u>L.R. 7.1(c) WORD-COUNT CERTIFICATION</u>

Pursuant to Local Civil Rule 7.1(c), I certify that the foregoing Memorandum of Law in Support of Plaintiffs' Order to Show Cause for a Preliminary Injunction contains 3,983 words, including material contained in footnotes and excluding the caption, any index, table of contents, table of authorities, signature block, and this certification, as calculated by Microsoft Word. The memorandum therefore complies with the 8,750-word limitation in Local Civil Rule 7.1(c).

Dated: New York, New York
       July 27, 2026

/s/ *Aaron J. Solomon*_____
**OVED & OVED LLP**
Aaron J. Solomon, Esq.
*Attorneys for Plaintiffs*
401 Greenwich Street
New York, NY 10013
Tel: 212.226.2376
Email: aaron@ovedlaw.com
